Clyde ELLISON, Jr., Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Superior Court of Delaware,
New Castle.

Submitted Sept. 6, 1979.

Decided Dec. 27, 1979.

Richard E. Fairbanks, Jr., Asst. Public Defender, Wilmington, for defendant below, appellant.

John T. Gandolfo, Jr., Dept. of Justice, Wilmington, for plaintiff below, appellee.

LONGOBARDI, Judge.

Clyde Ellison, Jr., Appellant here and Defendant below, was tried without a jury in the Court of Common Pleas on January 8, 1978. Appellant was charged with operating a motor vehicle while his license was suspended, displaying a fictitious registration card and license plate and operating an unregistered motor vehicle. Appellant was also charged with resisting arrest in violation of 11 *Del.C.* 1257.

At trial, Appellant moved to suppress evidence obtained as a result of an allegedly unconstitutional stop by the arresting officer. The trial court reserved decision on the four motor vehicle offenses pending a ruling on Appellant's suppression motion. The trial court entered a verdict of guilty on the resisting arrest charge. Appellant's suppression motion was granted as to all evidence relating to the four motor vehicle offenses and, consequently, he was found not guilty on these charges.

On January 26, 1978, Appellant moved for a new trial on the charge of resisting arrest. The motion was denied February 15, 1978. The following day, Appellant was sentenced to pay the costs of prosecution and to serve one year imprisonment with a credit for forty-eight days already served. On February 27, 1978, Appellant filed the instant appeal in the Superior Court from his conviction of resisting arrest.[1] The facts as found by the trial court are not disputed by the parties in this appeal and these findings do not appear on the record to be clearly erroneous.[2] Therefore, the trial court's findings of fact are accepted in their entirety.

Late in the evening of December 31, 1977, a State Police Officer observed Appellant operating an automobile on a public highway. The officer attempted to stop Appellant's vehicle but Appellant pulled into a nearby motel parking lot and parked his vehicle. The officer, who was following immediately behind the Appellant, parked his vehicle next to Appellant's. The trial court found that as of that moment, the officer did not have probable cause or a reasonable suspicion that the Appellant was or had been involved in any criminal activity.[3] The trial court consequently held the stop unconstitutional under the rationale of *State v. Prouse,* Del.Supr., 382 A.2d 1359 (1978), *aff'd,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

After following Appellant into the parking lot, the officer approached Appellant who had exited his vehicle and was standing next to it. The officer requested Appellant's driver's license and automobile registration certificate. Appellant admitted having no valid driver's license, whereupon the officer placed him under arrest by stating, "Okay, you're under arrest for driving with no valid license." Trial Transcript 7. Appellant was not physically restrained by the arresting officer at that time but was ordered to stand by the police car door on the passenger's side. The officer then walked around to the driver's side of his car to radio his dispatcher and secure his vehicle. While the officer was thus engaged, Appellant suddenly ran away from the police car and into a nearby motel room. The arresting officer radioed for reinforcements and, when two other police officers arrived at the scene, the three of them apprehended and subsequently charged the Appellant with resisting arrest and the four motor vehicle offenses.

On this appeal, Appellant asserts three possible errors of law, any one of which would require reversal of the judgment of conviction. First, he claims that under the common law of this State, he has the right to resist an unlawful arrest in a nonforcible manner. Second, even if such right does not exist as a matter of state law, Appellant claims that the Fourth Amendment to the United States Constitution gives him .

---

1. Because the State did not appeal the trial court's ruling on Appellant's suppression motion, this Court accepts the ruling below that the initial stop of Appellant by the arresting officer was unconstitutional.

2. *See* 11 *Del.C.* 5301(c); *see also State v. Cagle,* Del.Supr., 332 A.2d 140 (1974).

3. *See* note 1, *supra.*

the right to nonforcibly resist an unlawful arrest. Third, Appellant claims that all evidence of his flight was obtained as a direct result of an unconstitutional stop by the police and must therefore be suppressed under the Fourth Amendment's "exclusionary rule." If this evidence is suppressed, there remains no other evidence upon which his conviction for resisting arrest could be sustained. These claims, all of which were considered and rejected below, will be addressed seriatim.

I

Two statutory provisions must be considered in addressing Appellant's state law claim. The first provision, 11 *Del.C.* 1257, creates the substantive offense of which Appellant was convicted:

A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of himself or another person or intentionally flees from a peace officer who is effecting an arrest.

Resisting arrest is a class A misdemeanor. The second provision, 11 *Del.C.* 464(d), a subparagraph to a Section entitled "(Justification)—Use of force in self-protection," provides:

The use of force is not justifiable under this section to resist an arrest which the defendant knows or should know is being made by a peace officer, whether or not the arrest is lawful.

Appellant urges upon this Court a construction of these provisions that would authorize his conduct in fleeing from the arresting officer by recognizing a narrowly circumscribed right to resist an unlawful arrest. In effect, Appellant argues that the right he asserts in this case, i. e., to nonforcibly resist an unlawful arrest, existed at common law at the time the present Criminal Code was adopted and has not been eliminated by the above cited provisions.

In order to establish the first part of the above-stated argument, Appellant recognizes that he must somehow distinguish the holding in *Claire v. State*, Del.Supr., 294 A.2d 836 (1972). In *Claire* the Supreme Court had occasion to interpret a provision which was then 11 *Del.C.* 1905, 48 Del.Laws C. 304, § 5343–E, and provided as follows:

If a person has reasonable ground to believe that he is being arrested by a peace officer, he shall refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for arrest.

While this provision, which was repealed when the Delaware Criminal Code of 1973 became effective, explicitly refers only to use of force or any weapon in resisting an unlawful arrest, the Supreme Court stated, "We think the section . . . abolishes the common law right to resist an illegal arrest." 294 A.2d at 837. This holding did not recognize any distinction between forcible and nonforcible resistance. Additionally, other courts which have taken note of this law since the *Claire* decision have not recognized any such distinction. *See United States ex rel. Kilheffer v. Plowfield*, E.D.Pa., 409 F.Supp. 677, 680 n. 5 and accompanying text (1976); *United States ex rel. Horelick v. Criminal Court*, S.D.N.Y., 366 F.Supp. 1140, 1151 n. 12 and accompanying text (1973), rev'd on other grounds, 2d Cir., 507 F.2d 37 (1974).

 If the above holding in *Claire*, which has not explicitly been overruled or modified by the Delaware Supreme Court, remains viable, then Appellant's state law claim of a limited right to resist an unlawful arrest must be rejected. Appellant argues that the *Claire* holding on this issue is no longer good law since the provision interpreted in that case was repealed in 1973 at the same time the present 11 *Del.C.* 1257 and 464(d) became effective. While it is true that the former § 1905 was repealed, this Court believes that provision is substantially identical to the present 464(d),[4]

---

4. The relationship between these two provisions was noted by the drafters of the 1973 Criminal Code in the Commentary on § 464(d):

"The Code follows former Delaware law (citation to 11 *Del.C.* 1905) by declaring that resistance to arrest by one who the actor knows or

thus making the Supreme Court's holding in *Claire* equally applicable to an interpretation of § 464(d). Therefore, on the basis of *Claire* and § 464(d), this Court rejects Appellant's state law claim. Alternatively, the Court finds that Appellant's act of fleeing from the arresting officer was an act of force within the meaning of § 464(d) and, therefore, the illegality of his arrest cannot be asserted in justification of his conduct following the arrest. *Accord, People v. Carroll*, 133 Ill.App.2d 78, 272 N.E.2d 822 (1971); *contra, Marshall v. State*, Fla.App., 354 So.2d 107 (1978), *cert. denied*, 436 U.S. 920, 98 S.Ct. 2270, 56 L.Ed.2d 762 (1978).

Although either of the above holdings is sufficient to warrant rejection of Appellant's state law claim, there is a third basis upon which this Court's decision rests; that is, the clear language of § 1257. That provision on its face prohibits precisely the type of conduct in which Appellant engaged. "A person is guilty of resisting arrest when he . . . intentionally flees from a peace officer who is effecting an arrest." 11 *Del.C.* 1257. Appellant argues, without citing any specific authority, that the Legislature intended this provision to apply only where the underlying arrest was lawful. Therefore, this argument must stand or fall on the construction given the word "arrest" in § 1257 since it is not explicitly modified by the word "lawful" therein.

■ The word "arrest" is not defined in the Delaware Criminal Code. Therefore, 11 *Del.C.* 221(c) requires the Court to give this word "its commonly accepted meaning . . . ." *The Random House Dictionary of the English Language* 83 (unabridged ed. 1967) defines "arrest" as "the taking of a person into legal custody, as by officers of the law," and defines "under arrest" as "in custody of the police or other legal authorities." The core of these definitions is the notion that a person's freedom of movement has been restricted by a law enforcement official. It imports a "seizure" which impinges upon the citizen's right to movement or passage by one with "legal" authority. It is a broad term which covers "unlawful" or unconstitutional arrests albeit made by one "legally" authorized. The point is, the word "arrest" is different from the esoteric conclusions and consequences which follow the decision that an "arrest" was unlawful or unconstitutional. In the former situation, the word refers merely to the "seizure" (actual or constructive) and in the latter or "lawful" arrest situation, we are referring to a judicial conclusion about it. Therefore, the Court holds that § 1257 refers simply to the physical act of arrest and prohibits any resistance [5] thereto regardless of whether the arrest is later determined to have been unlawful.

This result comports fully with the public policies underlying the statute. The commentary on § 1257 states in pertinent part:

It will be recalled that this Criminal Code gives no right to resist an arrest by a police officer, whether or not the arrest was lawful and whether or not the accused knew the arrester was a police officer. [Citation to § 464(d)]. This is a complementary section designed to make resisting an arrest by a peace officer a substantive offense. The goal is to have him submit, calmly explain to the officer that the arrest was not warranted, and if that fails to explain it to the committing magistrate. He may not seek to prevent the arrest or use flight to resist the arrest . . . . It seems good policy to insist that [peace officer] efforts to make an arrest meet with no physical resistance

. . . .

When an arrestee offers physical resistance, should the police officer then decide whether his arrest was lawful and to counter the

should know is a police officer is not justifiable even though the arrest is unlawful." (Citation omitted).

**5.** Although holding that § 1257 has completely eliminated all vestiges of the common law right to resist an illegal arrest by physical means, the Court notes that nothing in this section prohibits one who believes he has been unlawfully arrested from verbally arguing the point with the arresting officer, just so long as resistance, through flight or other means, is not offered. Commentary on § 1257.

resistance with force and, if he does, isn't it reasonable to assume that physical resistance carries with it the threat of escalation into a tragically violent confrontation in which officers, innocent bystanders and resisting arrestees may be seriously injured or killed? These public policies would be seriously undermined were the Court to accept Appellant's interpretation of the statute. Recognition of a right to resist potentially unlawful arrests by flight would have the effect of encouraging such resistance. The Court does not believe the Legislature intended that result in enacting § 1257.

▪ Lastly, Appellant's argument that § 1257 requires the arrest to be lawful is refuted by reference to other relevant provisions which were considered by the Legislature at the time § 1257 was enacted. The language of § 464(d) shows conclusively that the Legislature was aware of the crucial difference between lawful and unlawful arrests. Also, in drafting the 1973 Criminal Code, its authors looked to the laws of other states, including New York and Pennsylvania, for guidance.[6] Both of these states explicitly require that the arrest underlying a charge of resisting arrest be lawful. Quite obviously, had the Legislature intended the illegality of the underlying arrest to be a defense in any § 1257 case, it knew how to draw this distinction and would have done so in express terms. Therefore, it is the opinion of this Court that the failure of the Legislature to so provide means that the illegality of the underlying arrest is no defense to a § 1257 charge. Because the Appellant's conduct in this case falls squarely within the literal terms of § 1257, the trial court did not err as a matter of state law in refusing to consider the illegality of the arrest as a defense.

Having thus disposed of Appellant's state law claim, it is now appropriate for the Court to consider his proffered federal constitutional claims.

## II

▪ Appellant's first constitutional argument is that he has a Fourth Amendment right to nonforcibly resist an unconstitutional arrest. The Fourth Amendment has been incorporated into the Fourteenth Amendment's Due Process Clause and is thus applicable to the States. *Wolf v. Colorado*, 338 U.S. 25, 27–28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949).

Although the Supreme Court has on two occasions referred in dicta to the existence of a common law right to resist an unlawful arrest, *United States v. DiRe*, 332 U.S. 581, 594, 68 S.Ct. 222, 228, 92 L.Ed. 210 (1948); *John Bad Elk v. United States*, 177 U.S. 529, 535, 20 S.Ct. 729, 731, 44 L.Ed. 874 (1900), the Appellant has not shown this Court a single reported federal case holding that such right exists as a matter of Fourth Amendment law. Because of this absence of federal judicial authority for his claim, Appellant seeks support from two Supreme Court cases which held that a person cannot be punished for refusal to obey a police order that violates his constitutional rights. *See Shuttlesworth v. Birmingham*, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965); *Wright v. Georgia*, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963). Appellant contends his arrest was unconstitutional because it directly resulted from an illegal *Prouse* stop; therefore, he argues, his act of flight was simply his way of ignoring the illegal police arrest order and he may not be punished for it.

In *Wright*, six black defendants had been ordered by police to leave a public park where they were playing basketball. The police officers were seeking to enforce a policy of racial segregation in the park. The defendants ignored the order to leave whereupon they were arrested and charged with assembling for the purpose of disturbing the peace. Because the state statute as applied to the *Wright* defendants infringed upon their equal protection and due process rights, the court held they "could not constitutionally be convicted for refusing to obey the officers." 373 U.S. at 292, 83 S.Ct. at 1245.

---

**6.** Commentary of § 101.

The defendant in *Shuttlesworth* was convicted in a state court under two vaguely worded ordinances, one dealing with loitering and the other with refusal to obey a police officer. Shuttlesworth and several other black people had been standing in a group on a public sidewalk when ordered to "move on" by a police officer. Although the others complied with this order, Shuttlesworth twice questioned the officer about the propriety of his command. For this activity, he was arrested and convicted. The Supreme Court reversed on due process grounds since the ordinances as applied to Shuttlesworth impermissibly impinged upon his First Amendment rights.

■ The common denominator of the police orders in *Wright* and *Shuttlesworth* is that obedience to the police orders would have forever deprived the defendants of their rights to engage in the protected activities and also would have denied them the opportunity to challenge the lawfulness of the police orders. The *Wright* and *Shuttlesworth* orders are thus distinguishable from an arrest order since the latter order's propriety will necessarily be subject to subsequent judicial review at the election of the arrestee. Because of this significant distinction, the Court finds the reasoning in another line of cases to be more apposite in the arrest order context than the *Wright/Shuttlesworth* analogy proffered by Appellant. These are cases like *Walker v. Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), which hold that *ex parte* court injunctions, even if unconstitutional, must be obeyed until overturned or dissolved through proper judicial process. The crucial similarity between court injunctions and police arrest orders is that both are subject to prompt judicial review during which the propriety of such orders is fully open to attack by the aggrieved party. Where society has provided its members with a reasonable means to obtain prompt and impartial review of their legal disputes, the necessity for resort to self-help remedies is radically dissipated and society need no longer tolerate such efforts. Put another way, the State has an overriding interest in assuring that orderly judicial procedures established for the resolution of legal disputes are honored, for respect for the "rule of law" is the keystone to a modern civilized society.

■ The Court notes that the only federal courts to have reached and decided the issue of a Fourth Amendment right to resist an unlawful arrest have been similarly persuaded by the *Walker* analogy drawn herein. *See United States ex rel. Kilheffer v. Plowfield*, 409 F.Supp. at 681 n. 6; *United States ex rel. Horelick v. Criminal Court*, 366 F.Supp. at 1151; *cf. United States v. Ferrone*, 3d Cir., 438 F.2d 381, 390 (similar treatment of asserted right to resist execution of an unconstitutional search warrant) (1971). *See also Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Therefore, on the facts presented in this case,[7] the Court holds that Appel-

---

7. The arrest order here involved certainly cannot be characterized as "transparently invalid," *Walker*, 388 U.S. at 315, 87 S.Ct. at 1829, or "patently unlawful," *Kilheffer*, 409 F.Supp. at 682; Chevigny, *The Right to Resist an Unlawful Arrest*, 78 Yale L.J. 1128, 1141–50 (1969). The *Prouse* case, upon which the trial court relied in holding the police stop of Appellant unconstitutional, was decided in the Superior Court on March 10, 1977 but was pending before the Delaware Supreme Court at the time of Appellant's stop on December 31, 1977. The Supreme Court upheld Judge Walsh's initial ruling in that case on January 30, 1978. *State v. Prouse*, Del.Supr., 382 A.2d 1359 (1978). Therefore, even though the arresting officer stopped Mr. Ellison without probable cause or a reasonable suspicion of criminal activity, the legality of the stop as a routine traffic check was at least arguable at the time it occurred. Of course, since the rulings of the Delaware Supreme Court and the United States Supreme Court in *Prouse*, police can no longer argue "colorable" legality in cases involving automobile stops without a reasonable suspicion of criminal activity. The point here, simply put, is that this Court is not required to decide if, under any conceivable set of facts, there may be a Fourth Amendment right to resist an illegal arrest. Traditional notions of judicial restraint normally require the Court to consider only the facts before it in rendering its decisions. Therefore, the interesting question of whether a "transparently invalid" or "patently illegal" arrest (whatever the precise scope of those terms may include) may give rise to a Fourth Amendment right to resist arrest must await a more appropriate factual setting than

lant did not have a Fourth Amendment right to resist the arrest.

## III

The final claim of reversible error in the trial court stems from the court's refusal to suppress police testimony concerning the facts of Appellant's arrest and flight. Appellant argues that but for the illegal stop, the police would not have arrested him or observed his subsequent flight. These observations were therefore the "tainted fruit" of the illegal stop and should have been suppressed via the Fourth Amendment's "exclusionary rule." A conviction under 11 *Del.C.* 1257 requires proof of an arrest and resistance thereto. Therefore, because the arresting officer's testimony was the only evidence introduced to prove these elements, suppression of such testimony would necessarily require dismissal of the § 1257 charge, or so the argument goes.

■ The proper test in such matters, as enunciated in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), is whether, granting the primary illegality, the evidence sought to be suppressed has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. For reasons which will become apparent, the Court views Appellant's argument as divisible into two parts: first as the claim relates to testimony about the fact of arrest, and second as it relates to testimony about the fact of flight.

■ As to testimony concerning the arrest, Appellant's argument is in effect an attempt to establish a *per se* rule that arresting officers may never testify concerning the fact of arrest following an illegal stop, since in all such cases the arrest will be a direct consequence of the illegal stop. This rule must be rejected for it sweeps far too broadly. Such a rule would necessarily apply not only in cases where resistance following arrest is without force but also in cases where the resistance is forcible, vio-

lent or even deadly. Any police testimony relating to facts occurring immediately subsequent to the illegal stop would be suppressed. Thus, under Appellant's proffered rule, one who violently assaults a police officer attempting to effect an arrest following an illegal stop would, in many if not most cases, be immune from prosecution for such acts. *See Watkins v. State*, Miss. Supr., 350 So.2d 1384 (1977). This Court finds nothing in the Constitution that requires the State to subject its law enforcement officers to such deadly potentialities.[8] Therefore, Appellant's argument as it relates to police testimony concerning his arrest must be rejected.

■ Although the same rationale applies to police testimony concerning Appellant's flight, application of the *Wong Sun* attenuation doctrine will also yield the same result as to this evidence. In applying this doctrine, the Court is mindful to avoid mechanical application of a "but for" type of test. *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *Watkins*, 350 So.2d at 1387. Rather, the Court looks to the circumstances in each case to determine whether application of the "exclusionary rule" will advance the rule's underlying purpose, i. e., to deter unlawful conduct by law enforcement officials by closing the courthouse door to illegally obtained evidence. *State v. Wrightson*, Del.Super., 391 A.2d 227, 228–29 (1978).

■ In the case at bar, the trial judge applied the rule to suppress all evidence relating to the four traffic offenses with which appellant had been charged. The evidence to support these charges was the direct consequence of that illegal stop. The result of the trial judge's ruling was Appellant's acquittal on the traffic offenses. This Court believes that the suppression of this evidence provided all the deterrence required by the Fourth Amendment. The Court does not believe the deterrence goal would be significantly furthered by suppression of police testimony concerning Appellant's act of resistance.

that presently before the Court for its ultimate resolution.

8. *See also* 1. W. LaFave, Search and Seizure § 1.11 at 218 (1978).

■ Moreover, the Court cannot agree with Appellant that police observations of his flight were come at through exploitation of the illegal stop or arrest. The record is completely devoid of facts tending to show that the police attempted to harass, provoke or entrap the Appellant into resisting arrest. The only way these police observations could be attributed to exploitation of the illegal stop or arrest is if Appellant's reaction could be characterized as the natural and foreseeable consequence of an illegal stop and arrest. Appellant so argues by claiming that his flight was a "predictable" response to the illegal stop and arrest.

The Court rejects this argument. Flight from the police is not the natural, predictable or even likely reaction of the average person who has been unconstitutionally stopped and arrested for mere traffic offenses. Because Appellant's flight was the product of a conscious and rational, albeit foolish choice, police observations of that act were obtained by means sufficiently distinguishable to be purged of the taint of the illegal stop. Therefore, this Court finds no error in the trial court's denial of Appellant's suppression motion as it related to these observations.

## IV

The Court has reviewed all of Appellant's claims in detail and finds no error in the trial court's rulings. Therefore, the judgment of the court below is hereby affirmed.

IT IS SO ORDERED.