**STATE of Delaware, Appellant,**

v.

**David WISNESKI and Louise Wisneski, Appellees.**

Superior Court of Delaware, Kent County.

Submitted: Feb. 15, 1983.

Decided: March 9, 1983.

Mark W. Bunitsky, Deputy Atty. Gen., for appellant.

James T. Vaughn, Dover, for appellees.

## OPINION

WRIGHT, Judge.

The State appeals the grant by the Court of Common Pleas of a motion to suppress a police officer's testimony of events surrounding his entry into a private home to effect an arrest.

The underlying charges resulted from an encounter between the officer and the defendants, Mrs. Wisneski and her son, David, which occurred as the officer was pursuing another son, Thomas, into the Wisneski home. The officer was attempting to arrest Thomas pursuant to warrants issued on account of his failure to respond to two traffic citations in J.P. Court. Mrs. Wisneski was charged with offensive touching and David with offensive touching and hindering arrest. The lower court held that the officer's non-compliance with the knock and announce rule before entry into the home was a violation of the defendants' Fourth Amendment protection against unreasonable searches and seizures and that, therefore, the officer's testimony of the ensuing struggle should be suppressed under the exclusionary rule.

First, the State contends that the officer was excused from complying with the knock and announce rule since he was in "hot pursuit" of Thomas who had committed a misdemeanor, resisting arrest, in his presence. In the alternative, the State argues that even if the officer's entry into the home was improper, the officer's testimony of what occurred during the entry does not fall within the exclusionary rule because it relates to a separate and non-tainted incident.

The events which led to the pursuit of Thomas are pertinent to the reasonableness of the officer's conduct. Having read the record, the Court adopts the well-supported facts as found by the lower court. On March 2, 1981, the officer issued two traffic citations to Thomas, age 16, for speed exhibition and driving without a license. The officer told Thomas the charges would be heard in Family Court. Several days later, after learning that the charges were to be heard in J.P. Court, not Family Court, the officer spoke to Thomas at his residence, advising him to appear in J.P. Court. Thomas and Mrs. Wisneski went to the J.P. Court as directed for the purpose of responding to the charges; however, the person on duty could not locate the citations either at the J.P. Court or Family Court. Thomas and his mother were told to wait for a letter from Family Court. Two weeks later the officer called the Wisneski home and spoke to David, telling him that his mother and brother should appear in J.P. Court. David told the officer they would

wait for a letter from Family Court. The officer then obtained warrants for Thomas' arrest. Two days later, early on a Monday morning, the officer positioned himself on the road leading out of the Wisneski's subdivision in order to arrest Thomas on his way to school. The officer observed Thomas who was a passenger in a car approaching in the officer's direction. The car then turned back toward the Wisneski home. The officer gave chase for approximately .2 of a mile to the Wisneski home where Thomas exited the car and ran into the house with the officer in close pursuit.

The testimony was in dispute as to the exact location of the defendants during the officer's approach to the house. The Court found that Mrs. Wisneski was several feet outside the residence on the front steps and that David was in the doorway. There was testimony that as the officer ran by, Mrs. Wisneski grabbed his arm and asked him what he was doing there. While still running, he responded, "To arrest your son." As he ran through the door, he collided with David, carrying him into the living room where a struggle ensued. The Court concluded the officer entered the home without advising the defendants of his purpose or authority for seeking admittance.

The first issue, narrowly stated, is whether "hot pursuit" of a 16 year-old in an attempt to execute arrest warrants for failure to respond to two traffic citations justifies a police officer's forcible entry into a private residence without compliance with the knock and announce rule and without consent of the misdemeanant's mother and brother who were present in or near the doorway of the home.

█ In addition to a long common law history, the knock and announce rule is mandated by the Federal and State constitutions. *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Dyton v. State,* Del.Supr., 250 A.2d 383 (1969); *Marvel v. State,* Del.Supr., 290 A.2d 641 (1972). Under the rule, in order to enter a private home to make an arrest or to carry out a search, a police officer must expressly announce the purpose of his coming. *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Along with a statement of the purpose of his coming, the officer must make a request for admittance before entering the house. *Dyton v. State,* supra. The Court in *Ker, supra,* held that the rule, while constitutionally required, was subject to reasonable exceptions developed by the states. In Delaware, non-compliance with the rule is justified in exigent circumstances and where compliance would be a useless gesture. Exigent circumstances exist where there is a good faith belief by the officer that compliance would increase his peril, frustrate arrest, or permit the destruction of evidence. E.g., *Dunfee v. State,* Del.Supr., 346 A.2d 173 (1975).

The State relies on three cases for support of its contention that "hot pursuit" is a separate exception to the rule, *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *State v. Wesson,* Or.Ct.App., 40 Or.App. 99, 594 P.2d 429 (1979); *State v. Penas,* Neb.Supr., 200 Neb. 387, 263 N.W.2d 835 (1978). However, as noted in *Dorman v. United States,* 435 F.2d 385 (D.C.Cir.1970), "hot pursuit" is not a limitation by an illustration of exigent circumstances. A close reading of two of the cases relied on by the State reveals that in each case an unannounced entry was justified regardless of the pursuit. In face of a pursuit, however, it was more likely the defendant in *Santana, supra,* would attempt to destroy a bag she was carrying believed to be drugs. In both *Santana and Wesson,* supra, a felony was in progress. In *Penas, supra,* the Court suggests the officer actually complied with the rule. In addition, there was a question whether the entry was made into the defendant's private residence or into a public area of the building.

█ In determining the ultimate question, whether the officer's conduct was reasonable, the Court prefers to analyze the circumstance of "hot pursuit" within the context of the previously recognized exigent circumstances. In the instant case, there were no recognized exigent circum-

stances and none were created by the officer's decision to give chase. Nor would compliance with the rule have been a useless gesture, since the defendants were not aware of the officer's purpose in time to consent to an entry.

The most striking distinction between the cases cited by the State and the instant case is the presence of Thomas' mother and brother, neither of whom were subjects of the officer's warrant and both of whom were lawful occupants of the home with privacy interests separate from Thomas'. The defendants concede the officer's right to enter the home to effect a lawful arrest, but object to the manner of entry.

It is helpful to consider the two-fold purpose of the knock and announce rule as stated in *Tatman v. State,* Del.Supr., 320 A.2d 750 (1974): to protect the privacy interests of citizens in their homes and to reduce the possibility of danger to police officers and citizens which might result from a misunderstanding of the entry. There is no question that compliance with the rule would have furthered its purpose. The officer's action precipitated a needlessly dangerous situation where none had existed.

In viewing the overall picture, including the events prior to the encounter, one's attention focuses more sharply on the unreasonableness of the officer's conduct. The same officer misinformed Thomas as to which court had jurisdiction over the traffic charges. After the officer corrected the information Thomas and his mother attempted to comply with the revised instructions. Again, they were misinformed as to the procedure to follow. In addition, the charges were traffic violations lodged against a minor. The officer never contacted the boy's mother before his sudden appearance three weeks after the original charges. Of course, these facts do not justify resistance to police authority. But against this background of misunderstanding, the Court weighs the need for precipitous action by the officer against a householder's essential freedom from unreasonable searches and seizures. The Court affirms Judge Trader's holding that the officer's noncompliance with the knock and announce rule was a violation of the defendants' Fourth Amendment rights.

■ The final issue is the application of the exclusionary rule. On finding the officer's entry was illegal, Judge Trader suppressed his testimony concerning both Mrs. Wisneski's and David's conduct during the incident. Although technically Mrs. Wisneski made contact with the officer before his entry, Judge Trader determined that her behavior was part of "one continuous transaction." At the point she made contact with the officer, his entry was inevitable and instantaneous. Nevertheless, the State contends that even if the entry was illegal, the defendants' conduct is sufficiently distinguishable from the primary illegality to be purged of the taint of the poisonous fruit.

In recent years, the tide has turned against the mechanical application of the exclusionary rule. *People v. Young,* N.Y., 55 N.Y.2d 419, 449 N.Y.S.2d 701, 704, 434 N.E.2d 1068, 1071 (1982), is an example of a court's fine balancing similar to a cost-benefit analysis: application of the rule requires "courts to balance the societal cost of losing reliable and competent evidence against the probable effectuation and enhancement of Fourth Amendment principles ..." Even so, the rule remains a strong remedy against unreasonable police intrusions into private homes which is at the very core of the Fourth Amendment. See *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980). The rule applies to both testimonial and non-testimonial evidence. *Rickards v. State,* Del.Supr., 77 A.2d 199 (1950).

The State relies on *Ellison v. State,* Del. Super. 410 A.2d 519 (1979), aff'd mem., Del. Supr., 437 A.2d 1127 (1981), U.S. cert. denied, 455 U.S. 1026, 102 S.Ct. 1730, 72 L.Ed.2d 147 for support of its contention that evidence of resisting arrest should not be excluded. In *Ellison,* the defendant was stopped without probable cause and placed

under arrest for four motor vehicle violations. While defendant was in custody, he fled from the police car. Evidence of the motor vehicle violations was excluded as the product of the unconstitutional stop; however, evidence of his flight and resistance to the arrest was admitted. Judge Longobardi upheld defendant's conviction for resisting arrest. The Court reasoned the defendant's act was not a predictable reaction and was not a product of the illegal stop. Judge Longobardi refused to apply the *per se* rule urged by the defendant, because to do so would result in the exclusion of all evidence of resistance to any illegal arrest, no matter how violent the assault on the police officer.

This Court also refuses to apply a *per se* rule and further approves Judge Longobardi's approach: "... the Court looks to the circumstances in each case to determine whether application of the 'exclusionary rule' will advance the rule's underlying purpose, i.e. to deter unlawful conduct by law enforcement officials ..." *Ellison,* 410 A.2d at 526.

In looking to the circumstances of each case, the Court finds the instant facts are readily distinguishable from *Ellison.* The defendants here were not resisting arrest. They were not the subject of the arrest warrants. And as Judge Trader found, they were not even notified an arrest was in progress before they reacted to the officer's entry. These events took place in a private home, not in police custody, nor in a public place. The privacy interests at stake were not those of the original lawbreaker, but of ones who prior to the entry were not under suspicion of any criminal act. The evidence sought to be excluded was the police officer's testimony of the defendants' immediate response to his forcible entry into their home. Of less importance is the ambiguous nature of the contact between the officer and defendants. In any event, there was no violent or premeditated assault.

Finally the Court applies Judge Longobardi's advancement of the purpose approach together with a cost-benefit analysis. By excluding the officer's testimony, deterrence of police misconduct will be furthered without impeding reasonable police efforts against crime. It is probable that compliance with the knock and announce rule would have actually simplified the officer's job. If he had taken a few moments to inform the defendants of his purpose and to enlist the cooperation of the young man's mother, the arrest most likely could have been expedited without further incident. Rather than condoning police conduct that complicates the difficult task of law enforcement, the Court affirms the lower court's effort to deter such occurrences. The Court's opinion is limited to the officer's testimony concerning these two defendants' immediate response to the officer's entry.

Accordingly, the Court of Common Pleas' grant of the defendants' motion to suppress is affirmed.