## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Case No. 1712001739 |
| | ) | |
| LYNILE CHAPMAN | ) | |
| | ) | |
| Defendant. | ) | |

Submitted:  April 1, 2019
Decided:    May 22, 2019

Brett D. Fallon, Jr., Esquire
Assistant Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Raj Srivatsan, Esquire
Assistant Public Defender
900 N. King Street, 2nd Floor
Wilmington, DE 19801
*Attorney for Defendant*

## DECISION AFTER TRIAL

The defendant, Lynile Chapman (hereinafter the "Defendant"), stood trial on October 22, 2018, for resisting arrest and possession of marijuana. Upon conclusion of trial, Defendant moved for dismissal of the case based on the police officer's lack of reasonable, articulable suspicion for the stop of Defendant. The Court denied Defendant's Motion to Dismiss, explaining that the charge of resisting arrest survives an illegal arrest. Defendant renewed his Motion to Dismiss and moved for acquittal which are herein denied for the reasons set forth below. Upon Defendant's Motion to Acquit, the Court dismissed, without objection from the State, the charge of possession of marijuana based on the State's failure to meet the burden of proof.[1] Defendant requested the

---

[1] The State effectively abandoned this count of the information and presented no evidence regarding possession of marijuana.

opportunity for briefing on the issue of resisting arrest, which the Court ordered. This is the Final Decision and Order of the Court after trial.

## FACTS AND PROCEDURAL HISTORY

On December 4, 2017, Defendant was charged with resisting arrest, in violation of 11 *Del. C.* § 1257(b), and possession of marijuana, in violation of 16 *Del. C.* 4764(c). On October 22, 2018, a bench trial was held and the charge of Possession of Marijuana was dismissed. A video from the body worn camera ("BWC") of the State's witness and arresting officer, Officer Justin R. Evans (hereinafter "Officer Evans") of the New Castle County Police Department, was viewed during trial. On the evening of December 4, 2017, Officer Evans and a fellow officer were on patrol when Officer Evans observed a sedan parked in the driveway of 116 Parma Avenue with its lights off and engine running. Officer Evans testified that Parma Avenue is located in a high crime area. Officer Evans ran the vehicle registration number and found that the vehicle was not registered to 116 Parma Avenue. After observing two occupants in the vehicle Officer Evans parked down the street to conduct further observation. After twenty minutes of inactivity observed, Officer Evans drove up to 116 Parma Avenue, at which time both occupants exited the subject vehicle. Officer Evans exited his marked patrol SUV and directed Defendant twice to "come here" so that Officer Evans could speak with him. Defendant proceeded to walk away from Officer Evans toward the front door of 116 Parma Avenue. Officer Evans again directed Defendant three times to comply with his orders. Following the third demand, Officer Evans added the warning that Defendant would be tased if he did not stop. Officer Evans then began to jog towards Defendant again stating that Defendant would be tased if he did not stop. Defendant proceeded to open the storm door of the residence, at which time Defendant received a final

2

warning that he would be tased. Defendant then opened the main door of the residence and Officer Evans tased Defendant and took him into custody.

## PARTIES' CONTENTIONS

Defendant argues that his Fourth Amendment rights were violated when Officer Evans invaded the curtilage of 116 Parma Avenue without probable cause. Further, Defendant contends it has not been proven that Defendant had clear notice that it was police ordering him to stop. Lastly, Defendant argues that a charge under 11 *Del. C.* § 1257 cannot survive the particular Fourth Amendment violations of this case and the legislative history of 11 *Del. C.* § 1257 does not contemplate Defendant's scenario.

The State argues that under no circumstances does Delaware law permit Defendant to resist arrest. Further, the State contends that the legality of the arrest is immaterial to a charge of resisting arrest.

## DISCUSSION

The issue for the Court to decide is whether Defendant can be convicted of resisting arrest, even if the arrest was unconstitutional. The Court has already dismissed the accompanying charge of Possession of Marijuana. In Delaware, resisting arrest is a class A misdemeanor and occurs when "the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest or detention of the person."[2] "The statute does not make a distinction between legal and illegal arrests."[3] "[F]ailure of the Legislature to . . . provide [such a distinction] means

---

[2] 11 *Del. C.* § 1257(b).
[3] *Jones v. State*, 745 A.2d 856, 872 (Del. 1999).

3

that the illegality of the underlying arrest is no defense to a [charge of resisting arrest under 11 *Del. C.* § 1257]".[4] "The purpose behind the rule that resisting even an illegal arrest constitutes a crime is to foster the effective administration of justice, to deter resistance to arrest and to provide for the safety both of peace officers and the citizens of Delaware."[5] Furthermore, the Fourth Amendment provides sufficient protection to citizens by requiring the exclusion of evidence seized as a result of the illegal arrest.[6]

After consideration of the aforementioned facts of Defendant's case in conjunction with the law as explicitly stated in *Ellison v. State* and *Jones v. State*, the Court finds that a charge of resisting arrest is appropriate here. *Ellison* and *Jones* both involve the illegal arrest of a defendant and the suppression of evidence derived from that arrest as the just result. The *Ellison* court explained, "suppression of . . . evidence provided all the deterrence required by the Fourth Amendment."[7] "This Court does not believe the deterrence goal would be significantly furthered by suppression of police testimony concerning the act of resistance."[8] In Defendant's case, the fruit of the illegal arrest, the alleged discovery of marijuana, has already been dismissed by this Court.

Defendant allocates a significant portion of his briefs to arguing the illegality of the arrest. It is not necessary for the Court to provide a detailed analysis on this issue, as the legality is not pertinent to the resisting arrest charge here. Defendant further argues that his person was illegally seized for purposes of the Fourth Amendment. The Court does not disagree that Defendant was

---

[4] *Ellison v. State*, 410 A.2d 519, 524 (Del. Super. 1979), *aff'd*, 437 A.2d 1127 (Del. 1981) ("Because the Appellant's conduct in this case falls squarely within the literal terms of [11 *Del. C.* §] 1257, the trial court did not err as a matter of state law in refusing to consider the illegality of the arrest as a defense.").

[5] *Jones* at 873.

[6] *Id.*

[7] *Ellison* at 526.

[8] *Id.*

4

seized.[9] In accordance with *Jones*, Defendant was seized, as a reasonable person would not have felt "at liberty to ignore the police presence and go about his business"[10] after the officer directed him to stop or be tased. Like *Jones*, consideration of whether one was seized and when such seizure occurred goes towards an evaluation of the legality of the stop which is not pertinent to a charge of resisting arrest. Defendant also contends that seizure of a person on the curtilage of their home at night should be analyzed differently from a seizure occurring in a public place, as the Fourth Amendment provides heightened protections to one's home, especially at night. While the protections of the Fourth Amendment apply differently in various scenarios, Defendant provides no case on point with this requested exception. In fact, Defendant relies on cases which are either distinguishable or support the opposing argument.

Defendant relies on *State v. Wisneski*,[11] wherein the Delaware Superior Court affirmed a Court of Common Pleas decision suppressing an officer's testimony regarding events that transpired in a private home while affecting an arrest. The circumstances gave rise to charges of offensive touching and hindering arrest against third parties. In his argument, Defendant omits pivotal information forming the basis of the *Wisneski* decision.[12]

---

[9] Under United States Supreme Court case, *California v. Hodari D*, Defendant was not seized for purposes of the Fourth Amendment until he was tased. 499 U.S. 621 (1991). Delaware, though, expands upon the protections of the Fourth Amendment and would recognize that a seizure of Defendant occurred the first time Officer Evans directed Defendant to "come here" while Defendant was still in the driveway by the car. *See Jones v. State*, 745 A.2d 856 (Del. 1999). The State tacitly concedes the potentially unlawful nature of the arrest. However, since the legality of the arrest is not material to the resisting charge here, the Court need not reach that issue, as the charge of resisting arrest survives even if this arrest was unconstitutional.

[10] *Jones* at 862.

[11] *State v. Wisneski*, 459 A.2d 129 (Del. Super. 1983).

[12] In his Reply Brief, defendant represents that the *Wisneski* "[c]ourt found the defendants had not resisted arrest although they used 'force' to escape an officer's invasion of their property which took place 'in a private home, not in police custody, nor in a public place.'" Def.'s Reply Br. at 8. Defendant again makes this representation in a footnote. Def.'s Reply Br. n.5. *Wisneski* is simply not a case about resisting arrest. The *Wisneski* court explicitly distinguished *Wisneski* from a resisting arrest case and stated "defendants here were not resisting arrest." The charges dealt with in *Wisneski* were offensive touching and hindering arrest against third parties which were not the subjects of arrest.

5

In *Wisneski*, an officer was pursuing a subject who had a warrants for his arrest for failure to respond to traffic citations. The officer chased the subject into his residence, encountering the subject's mother and brother during the pursuit. The mother and brother made contact with the officer and were charged with offensive touching and hindering arrest. In *Wisneski*, the Court discusses at length the importance of the knock and announce requirement and why, under the exclusionary rule's balancing test, the Court decided to suppress the testimony of the officer. Significantly, the Court explained that the facts of *Wisneski* were distinguishable from *Ellison* where the defendant was convicted of resisting an illegal arrest. Unlike *Ellison*, the defendants in *Wisneski* were not even charged with resisting arrest and were not the subjects of the arrest warrants. In contrast to the facts in the case at bar, in *Wisneski*, "[t]he privacy interests at stake *were not those of the original lawbreaker*, but of ones who prior to the entry were not under suspicion of any criminal act."[13] It is with these facts in mind that the Court reasoned that the exclusionary "rule requires courts to balance the societal cost of losing reliable and competent evidence against the probable effectuation and enhancement of Fourth Amendment principles"[14] and emphasized that the rule "remains a strong remedy against unreasonable police intrusions into private homes which is at the very core of the Fourth Amendment."[15]

Like *Ellison*, but distinguishable from *Wisneski*, Defendant is the subject of the arrest underlying the charge of resisting arrest and here, the police did not enter the home. Defendant is attempting to extrapolate the facts of *Wisneski* to the driveway by claiming the driveway at issue was within the curtilage.

---

[13] *Id.* at 133 (emphasis added).
[14] *Id.* at 132 (internal citations omitted).
[15] *Id.*

6

Defendant's contention that a charge of resisting illegal arrest cannot survive if it occurs within the curtilage of a residence on the basis that the Fourth Amendment places heightened protections on the privacy of one's home, is also without merit, as the driveway in question was not within the curtilage.

Defendant points the Court to *Collins v. Virginia*,[16]a case which evaluates curtilage. The Fourth Amendment "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . extend[s] to the curtilage of a home."[17] "The protection afforded [sic] the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened."[18]  Delaware courts look to four factors when determining if an area lies within the curtilage: "(1) '[t]he proximity of the area [that is claimed to be curtilage] to the home;' (2) '[w]hether the area is in an enclosure surrounding the home;' (3) '[h]ow the [resident] uses the area;' and, (4) '[t]he efforts undertaken by the [resident] to protect the area from observation.'[19] In *Collins*, a police officer found a motorcycle parked at a residence which he had reason to believe was stolen. The officer, without a warrant, walked to the top of the driveway where the motorcycle "was parked inside a partially enclosed top portion of the driveway that abuts the house"[20] and was hidden under a tarp. More specifically, the motorcycle was located on a portion of the driveway that sits behind the front perimeter of the house and is partially enclosed by walls on three sides. "A visitor endeavoring to reach the front door of the

---

[16] 138 S. Ct. 1663 (2018).
[17] *Id*. at 1669.
[18] *Id*. at 1670 (quoting *California v. Ciraolo*, 476 U.S. 207, 212-13 (1986)).
[19] *State v. Guardarrama*, 2016 WL 7235694, at *4 (Del. Super. Dec. 14, 2016), *aff'd*, 179 A.3d 865 (Del. 2018) (citing *State v. Bradley*, 2011 WL 1459177, at *13 (Del. Super. Apr. 13, 2011), *aff'd*, 51 A.2d 423 (Del. 2012)).
[20] *Collins* at 1667.

house would have to walk partway up the driveway, but would turn off before entering the enclosure"[21] where the motorcycle was located.

Defendant's case is clearly distinguishable from Collins. Defendant's unenclosed driveway was approximately the length of one car and was immediately connected to a sidewalk at the front-end and the house at the back-end. A visitor, endeavoring to reach the front door of the residence, would have to take the exact path that Officer Evans took.[22] Defendant's driveway was not so "intimately linked to the home" that Defendant would feel his privacy expectations were "most heightened."[23] From the video presented, it is evident that Defendant's driveway was not enclosed and not intentionally protected from public observation. Accordingly, the driveway fails parts two, three, and four of the curtilage test.[24] Were the Court to conclude otherwise, it would be tantamount to concluding that every driveway is curtilage.

It appears to be Defendant's further argument that private property automatically amounts to curtilage. The defense's position is contrary to both federal and state settled constitutional law. The Fourth Amendment protections of the home extend to curtilage only.[25] Outside of curtilage, there are no Fourth Amendment protections.[26] Defendant also provides the Court with no basis to

---

[21] *Id.* at 1671.

[22] An "implied license to approach the front door extends to the police . . . who are not armed with a warrant . . . even [when] damning evidence [is obtained] . . . [as] they are permitted to see, hear, and smell whatever can be detected from a lawful vantage point." *Florida v. Jardines*, 569 U.S. 1, 21 (2013) (internal citations omitted).

[23] *Collins* at 1670 (quoting *California v. Ciraolo*, 476 U.S. 207, 212-13 (1986)).

[24] There are two United States Supreme Court cases, wherein the Court found the driveway to be curtilage. In *U.S. v. Dunn*, the driveway was chained and locked and the 198-acre property was completely fenced in. 480 U.S. 294 (1987). In *Collins v. Virginia*, the part of the driveway considered curtilage sat behind the front of the house, was partially enclosed on three sides, and was outside the route invitees would take when approaching the home. 138 S. Ct. 1663 (2018). The steps taken in *Dunn* and *Collins* to ensure privacy vastly differ from Defendant's case.

[25] *Hester v. United States*, 265 U.S. 57, 59 (1924) ("[T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields."); *Olmstead v. United States*, 277 U.S. 438, 466 (1928), *overruled in part by Berger v. State of N.Y.*, 388 U.S. 41 (1967), *and Katz v. United States*, 389 U.S. 347 (1967) (holding that a Fourth Amendment violation occurs when there has been "an official search and seizure of [a] person . . . a seizure of his papers or . . . effects or an actual physical invasion of his house 'or curtilage' for the purpose of making a seizure."); *State v. Halko*, 188 A.2d 100, 111 (Del. Super. 1962) ("As a general rule, land and buildings outside the curtilege [sic] are not protected from unreasonable searches and seizures.").

[26] Anything outside the home and curtilage is open field and is not subject to Fourth Amendment protections. *Hester* at 59.

find that an unobstructed, open driveway, abutting a public sidewalk, should be treated as curtilage.[27] Therefore, the Court finds Defendant's driveway is not part of the curtilage and is not subject to the heightened protections afforded to the home under the Delaware and United States Constitutions.

The result that resisting arrest can survive underlying illegalities "comports fully with the public policies underlying the statute."[28]

> When an arrestee offers physical resistance, should the police officer then decide whether his arrest was lawful and to counter the resistance with force and, if he does, isn't it reasonable to assume that physical resistance carries with it the threat of escalation into a tragically violent confrontation in which officers, innocent bystanders and resisting arrestees may be seriously injured or killed? . . . Recognition of a right to resist potentially unlawful arrests by flight would have the effect of encouraging such resistance. The Court does not believe the Legislature intended that result.[29]

This Court has no basis to make a finding that is contrary to explicit statutory and case law on this issue. Furthermore, the Court declines to agree that Defendant did not have clear notice that a police officer was ordering him to stop. Officer Evans was driving a fully marked New Castle County Police SUV and was dressed in full uniform. Moreover, Officer Evans was threatening Defendant with use of a taser, an instrument commonly used by police officers and not so commonly used by civilians.

---

[27] There was a hedge or a bush to one side of the driveway, the purpose of which was unclear; however, the barrier in no way provided privacy from the public sidewalk and street.
[28] *Ellison* at 523.
[29] *Id.* at 523-24.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** this 22th day of May, 2019, that Defendant should be and is **HEREBY** adjudicated **GUILTY** of resisting arrest pursuant to 11 *Del. C.* § 1257(b). Therefore, Defendant's renewed Motion to Dismiss the charge of resisting arrest is **DENIED**. The matter is scheduled for sentencing on June 21, 2019.

The Honorable Carl C. Danberg,
Judge

cc:     Shawn Johnson, Judicial Case Manager

10