James R. DUNFEE, Defendant below, Appellant,

v.

STATE of Delaware, Plaintiff below, Appellee.

Supreme Court of Delaware.

Argued Sept. 16, 1975.

Decided Sept. 30, 1975.

William J. Taylor, III, Asst. Public Defender, Wilmington, for defendant below, appellant.

Gregg E. Wilson, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendant appeals from his conviction in Superior Court for possession with intent to deliver a non-narcotic schedule I controlled substance (marijuana) in violation of 16 Del.C. § 4752. He contends that evidence was unlawfully seized from his home pursuant to a nighttime search warrant which was improperly issued and executed.

I

Defendant argues that the warrant was improperly issued because the application for the warrant did not specifically show that it was "necessary to prevent the escape or removal of the person or thing to be searched for"; that, therefore, the documents did not meet the requirements of 11 Del.C. § 2308 which provides:

"A search warrant shall not authorize the person executing it to search any dwelling house in the nighttime unless the judge, justice of the peace or magistrate is satisfied that it is necessary in order to prevent the escape or removal

of the person or thing to be searched for, and then the authority shall be expressly given in the warrant."

The affidavit upon which the warrant was issued alleged in substance as follows: The police received information from a reliable informant that defendant and his wife were selling drugs from their home. They also received anonymous phone calls stating that between the hours of 8 P.M.–12 P.M., numerous cars would stop in front of defendant's house, the occupants of the cars would go inside the house for a few minutes and then leave, and that conversations from inside the house concerning drugs were overheard. A controlled purchase was made from defendant of a substance which was subsequently tested by the police and determined to be marijuana. A few days later, in the early evening of the night on which the search warrant was procured and executed, the informant told police that defendant had drugs in his home at that time and was selling them. The application concluded: "the objects to be searched for being drugs are now in the possession of the subjects described, on the premises of 415 Porter St. and are at this time being removed from that premises by means of sales. Your affiants feel it imperative that a nighttime search warrant be issued to keep as much of the dangerous drug marijuana from reaching the streets of the city of Wilmington, Delaware."

■ Defendant focuses on this final allegation and argues that it fails to show specifically the "necessity" required by § 2308. However, this argument ignores the settled principle that the factual sufficiency of an affidavit is tested by considering it as a whole and not in terms of its isolated component allegations. *Edwards v. State*, Del.Supr., 320 A.2d 701 (1974); *Rossitto v. State*, Del.Supr., 234 A.2d 438 (1967); *Mezzatesta v. State*, Del.Supr., 3 Storey 145, 166 A.2d 433 (1960). While this test has heretofore been used only in connection with determining sufficiency to establish probable cause, we see no reason not to apply it here in determining sufficiency to establish "necessity" for a nighttime search.

■ We believe that while the "necessary" element in the application was vague and could have been alleged more precisely to conform to the statutory language, the affidavit as a whole contained sufficient information upon which the issuing judge could be satisfied that a nighttime warrant was necessary in order to prevent removal of evidence.

In a letter opinion the issuing judge stated:

"The warrant application states that the " * * * objects to be searched for being drugs are now in the possession of the subjects described in the premises of 415 Porter Street and at this time are being removed from the premises by means of sales. Your affiants feel it is imperative that a nighttime search warrant be issued to keep as much of the dangerous drug marijuana from reaching the streets * * *". The affidavit in addition details a controlled situation where an alleged purchase of dangerous substances was made. Further, on the date the warrant was issued and the affidavit presented, August 11, 1973, the affiants alleged that the information about the dangerous substances being on the premises was received in the early evening hours of the 11th day of August, 1973. The same affiants stated that the subjects and the material to be searched for was being sold that evening.

The warrant specifically stated that a determination was made that a nighttime search was necessary to prevent the escape or removal of the person or thing to be searched for . . .

Certainly sales would dictate that the item would be removed either by the person selling or by purchasers.

The Court concludes that there was sufficient reason for the issuance of the nighttime search warrant."

We note, in addition, that police information indicated that sales were occurring at night between the hours of 8–12 P.M.

Accordingly, we hold that the warrant was not invalid under 11 Del.C. § 2308.

## II

Defendant argues that the warrant was improperly executed by a no-knock entry in violation of the "knock and announce" rule, *Dyton v. State*, Del.Supr., 250 A.2d 383 (1969).

In *Tatman v. State*, Del.Supr., 320 A.2d 750 (1974), we fully discussed the "knock and announce" rule and its purposes; we recognized that noncompliance with the rule may be justified by a good faith belief on the part of the police officers that "full and complete compliance with the rule would have increased their peril, frustrated the arrest, or permitted destruction of evidence." 320 A.2d at 751. In determining whether any of these "exigent circumstances" existed, "we may concern ourselves only with what the officers had reason to believe at the time of entry." *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); see also *Patrick v. State*, Del.Supr., 227 A.2d 486 (1967).

The events leading up to the search were described as follows: The police, driving an unmarked car, pulled up in front of defendant's house and stopped in a well-lit area about 5 feet from the front door. They were all dressed in plain clothes but wore badges; one officer wore a bullet-proof vest marked "POLICE" in large letters across the front. The front door of the house was wide open, and there was a glass storm-door which was closed but through which the police could see inside the house and the occupants could see the street.

On cross-examination, a police officer testified:

"As I stated before, as we initially pulled up there were approximately six or seven or eight people seated around in the living room. As we emerged from the vehicle—well, as we pulled up and observed the subjects seated in the living room and it appeared as though everyone's attention more or less focused on us. As we got out of the vehicle two subjects stood up and appeared to be going towards the direction of the kitchen and another subject stood up and went towards the stairway."

\* \* \* \* \* \*

Q. Is there anything in this particular case that might give rise to any substantial suspicion that the drugs might be destroyed?

A. Yes Sir. Just the fact that I saw people, they saw us and like Officer Hickman stated, he saw them, too. They were walking toward the kitchen. I have lost drugs like that. When you have a heroin case, especially it is so easy to flush it on you, you have to act quick."

Thus, believing they had to act quickly, the police entered the house without knocking, simultaneously announcing that they were police and had a warrant. The house was then searched and drugs were found and seized.

We conclude that under these circumstances the police acted reasonably in believing that the occupants of the house were aware of police presence prior to entry and that the no-knock entry itself was necessary in order to prevent destruction of evidence. Accordingly, noncompliance with the "knock and announce" rule was justified, and the search and seizure were not unlawful.

Affirmed.