**Troy GREGORY, Defendant–Below, Appellant,**

v.

**STATE of Delaware, Plaintiff–Below, Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 6, 1992.
Decided: Nov. 12, 1992.

Michael W. Modica, Wilmington, for appellant.

Kathleen M. Jennings, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., MOORE and HOLLAND, JJ.

MOORE, Justice.

Troy Gregory was convicted by a jury of Trafficking in Cocaine, Possession with Intent to Deliver Cocaine and Possession of Drug Paraphernalia. Gregory appeals these convictions on several grounds, but we address only two:

1) The Superior Court's failure to suppress evidence collected during the search because, in the absence of any discernable exigent circumstances, the police's failure to wait longer than 3–5 seconds before forcing entry to the apartment violated the constitutional requirements of knock and notice; and

2) The Superior Court's failure under D.R.E. 609(a)(2) to determine whether defendant's prior narcotics-related convictions involved "dishonesty or false statement" or else balance their probative value against their prejudicial effect before permitting the State to use them to impeach Gregory during cross-examination.

These are fundamental errors mandating reversal.

## I.

On November 8, 1990, members of the Wilmington Police Department's Drug and Organized Crime Unit, obtained a search warrant for 702 N. Adams Street, Wilmington, Delaware. This is a three story building with two separate apartments. The warrant authorized a search of Apartment 2 for cocaine and any drug-related paraphernalia used to process, package or consume illegal drugs. That apartment was located on the second and third floors of the building.

In the late afternoon of November 8th, three detectives arrived at the premises to serve the warrant. The officers approached the front door of the building, located at the ground level just outside of Apartment 1, without detection. One detective knocked on the door and called "Police, we have a search warrant." Only 3–5 seconds later, and hearing no noise from inside the apartment, the detectives broke down the front door with a sledge hammer. Once inside, they located and arrested Gregory in a third floor bedroom. After a

search, cocaine and various items of drug paraphernalia were found throughout that bedroom.

## II.

### A.

■ Gregory claims that the trial court erred in failing to suppress the evidence collected during the search. Defendant argues that in the absence of any discernable exigent circumstances, the police's failure to wait longer than 3–5 seconds before forcing entry to the apartment violated the constitutional requirements of knock and notice. We review the trial court's refusal to grant a motion to suppress, after an evidentiary hearing, under an abuse of discretion standard. *Alston v. State*, Del. Supr., 554 A.2d 304, 308 (1989). Thus, Gregory's conviction can be reversed only if the Court finds the decision below to be clearly erroneous. *Potts v. State*, Del. Supr., 458 A.2d 1165, 1168 (1983).

### B.

■ Gregory bottoms his knock and notice argument on the principles of *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) and *Marvel v. State*, Del.Supr., 290 A.2d 641 (1972). Generally, those requirements are that an officer who has constitutional authority to enter a residence must first announce his authority and purpose before entering, and then may force entry only if denied admittance. *Id.* Gregory also relies on *State v. Harper*, Del.Super., C.A. No. IN91–02–1862–1864, Graves, J., 1991 WL 166069 (August 1, 1991) (ORDER), which held that a wait of 3–5 seconds before using a battering ram to force entry into a dwelling is unreasonable absent facts establishing exigent circumstances.

■ The State contends that Gregory waived his right to challenge the entry by failing to object at trial. Although the failure to object to the admission of evidence *or* to move timely to suppress evidence constitutes a waiver of that issue on appeal, *Brooks v. State*, Del.Supr., 229

A.2d 833, 836 (1967) (emphasis added); Del. Supr.Ct.R. 8; Del.R.Evid. 103(a)(1), the record conclusively establishes that the objection was properly raised. The issue of the entry arose at the suppression hearing and during cross-examination of Detective Pacheco by defense counsel. The motion to suppress, standing alone, preserved the issue on appeal.

### C.

The State argues that exigent circumstances exist whenever the police are serving a warrant for powder-based narcotics, including cocaine. Because any delay could result in loss of evidence, the State contends that the detectives' token compliance with the knock and notice rule is justified. Had the State developed a factual basis for the claim of exigent circumstances, this might be a very different case. Instead, the State essentially asks us to adopt a per se rule that every search for narcotics is inherently exigent. Adopting that rationale would create the exception that swallowed the rule. It has no constitutional basis whatever.

In *Marvel v. State*, Del.Supr., 290 A.2d 641 (1972), we approved use of a manager's key to facilitate rapid police entry to an apartment immediately after the police announced their identity. *Id.* at 644. There, the Court reasoned that no particular wait was required following the announcement by the police because the legality of the entry ultimately depended on the circumstances and apparent likelihood that delay would permit occupants to dispose of relevant evidence. *Id.; See, e.g. Carter v. State*, Del.Supr., 418 A.2d 989 (1980) (approving forced police entry to hotel room after 30 second delay). In *Marvel* the Court did not discuss the facts or circumstances permitting immediate entry. Later decisions address that issue.

In *Tatman v. State*, Del.Supr., 320 A.2d 750 (1974), the Court examined in detail the application of the knock and notice rule. There, the defendant's conviction for possession of hypodermic syringes was reversed because the police's cursory knock on the exterior of a common doorway to a multiple apartment dwelling did not comply with the rule or fall under any one of the judicially recognized exceptions. *Id.* at 751. The Court also observed that the knock and notice rule is a requirement of state and federal constitutional dimensions. *See, e.g., Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Dyton v. State*, Del.Supr., 250 A.2d 383 (1969).

■ The dual purpose of the rule is to protect the privacy of the resident as well as to reduce the possibility of danger to officers and citizens alike. Its requirements can be avoided only when the police have a *good faith belief* that compliance with knock and notice will increase their peril, frustrate the arrest or permit destruction of evidence. *Id.* at 751, (emphasis added); *compare State v. Wisneski*, Del.Super., 459 A.2d 129 (1983) (search invalidated because "hot pursuit" is not one of the judicially recognized exceptions to the knock and notice rule).

Our subsequent cases recognize that the facts and circumstances test of *Marvel* has been modified by *Tatman* to require police to possess a good faith belief that an exception exists before forcing entry to a residence in violation of the rule. In *Wilson v. State*, Del.Supr., 343 A.2d 613, 619 (1975), the Court cited both *Marvel* and *Tatman* in approving immediate entry because the police knew of a threat to use a weapon against them. Such knowledge provided a substantial foundation to support a good faith belief that compliance with the rule would increase the officers' peril. *Dunfee v. State*, Del.Supr., 346 A.2d 173, 176 (1975) further clarified the test set forth in *Tatman* to be one "concerned only with what the officers had reason to believe at the time of entry." There, two occupants immediately took evasive action when they saw the police approaching to search the residence. Under such circumstances the police were justified in acting quickly to prevent the potential destruction of evidence. *Id.*

Finally, in *Potts v. State*, Del.Supr., 458 A.2d at 1168, we reexamined the question whether the time interval between the police's announcement and forced entry dur-

ing execution of a drug-related search warrant was sufficient. Applying the standards in *Dunfee* and *Tatman*, we upheld a rapid police entry because of the evasive action taken by one of the occupants. *Id.* In *Potts*, it became clear that the police's *expressed* concern for the destruction of evidence, corroborated by the evasive action taken in response to the officers' arrival, satisfied the good faith requirement imposed upon the police at the time of entry. *Id.* (emphasis added).

 The record in this case is totally devoid of evidence that the police either articulated any exigent circumstances or expressed concern about the destruction of evidence before or after the search. Thus, the facts here are identical to those in *Harper*. The police simply rushed the premises and, virtually contemporaneous with their arrival, battered down the door with a sledge hammer. Unlike *Potts, Dunfee* or *Wilson*, the police were not confronted by occupants fleeing upon their approach. Just like *Tatman* and *Wisneski*, no judicially recognized exception to the knock and notice rule was present. Under the circumstances a wait of only 3–5 seconds was per se unreasonable. Any other

result would vitiate the knock and notice rule which has as its fundamental purposes the basic safeguards—sanctity of one's home, and the protection of both the residents and police from unnecessary harm. Such a constitutional violation cannot be dismissed as harmless error.

### III.

Another serious problem occurred at trial. Gregory testified in his own defense. On direct examination he admitted to using drugs, but denied the drugs found in the bedroom belonged to him. Gregory also admitted having been convicted of "more than one" felony in 1981 and 1986, but did not further describe them. On cross-examination the prosecutor embarked on a series of improper questions, compounded by the fact that they were based on the factually incorrect premise that Gregory had admitted to only a "couple of felonies". Without objection the prosecutor asked Gregory if he had actually been convicted of six separate felonies, then detailed them one by one: two counts of Forgery, Delivery of Marijuana and two counts of Possession with Intent to Deliver Marijuana.[1] The jury later found Gregory guilty as charged.

---

1. The specific questions asked Gregory on direct examination were:

Q. Have you ever been convicted of a felony?
A. Yes.
Q. More than one?
A. Yes, sir.
Q. Have those convictions occurred here in Superior Court?
A. Yes, sir.
Q. And do you remember when they occurred?
A. '81 and '86.

Apparently, this prompted the following cross-examination, based not only on a faulty premise, but far transcending the proper scope of such an inquiry:

Q. Now you indicated to Mr. Kennedy, I believe, at the beginning of your testimony, that you were convicted of a couple of felonies; is that right?
A. Yes, ma'am.
Q. Well, it's, in fact, six separate felonies that you have been convicted of; is that true?
A. No, I don't believe so.
Q. Six—
A. I don't believe it was six straight felonies.
Q. You don't believe there's six separate felonies?
A. No, ma'am.

Q. Let's go through them. Do you recall having been convicted, back in 1982, of Burglary?
A. Yes, ma'am.
Q. that's number one. Do you recall having been convicted, in 1986, of Forgery in the 2nd Degree?
A. Yes, ma'am
Q. And you were convicted of two forgeries in the second degree; correct?
A. Yes, ma'am.
Q. That's two and three. Do you recall, in 1987, being convicted of Delivery of Marijuana?
A. Yes, ma'am.
Q. That's number four. Do you recall, in 1987, being convicted of Possession with Intent to Deliver Marijuana?
A. No, ma'am.
Q. You do not recall that?
A. No, ma'am.
Q. And you don't recall, I guess, being convicted twice of Possession with Intent to Deliver Marijuana, which would make it six?
A. No.
Q. You don't?
A. No, ma'am.
Q. Okay. I'm going to show you a document. that's the Court docket sheet.

## A.

■ That cross-examination was plain error. Under D.R.E. 609(a)(2) evidence of defendant's felony convictions may be admitted without balancing their prejudicial effect against their probative value only if the prior convictions involved dishonesty or false statement. The trial court, clearly, was required to determine whether prior convictions for delivery and possession of marijuana with intent to deliver are crimes within the meaning of Rule 609 involving dishonesty or false statement. Without such a determination, or the alternative balancing, past convictions for narcotics offenses created a substantial risk that the jury would draw the character inference, forbidden by D.R.E. 404(b), that the defendant acted in conformity with a character predisposed to selling drugs. That failure was clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. *Wainwright v. State,* Del.Supr., 504 A.2d 1096, 1100 (1986).[2]

## B.

Under Delaware law, all relevant evidence is admissible except as otherwise restricted by statute, the rules of evidence, or other rules of court. D.R.E. 402. Relevant evidence means any evidence having any tendency to make more or less probable a fact of consequence. D.R.E. 401. Proof of a defendant's prior convictions is relevant when the defendant testifies because they bear upon questions of credibili-

ty. But because there is a risk that evidence of prior crimes can be misunderstood by the jury, D.R.E. 404(b) provides that evidence of other crimes is not admissible to prove the character of a person to show that he or she acted in conformity therewith.

■ Of course, in the past we have recognized exceptions to this rule of exclusion according to the test set forth in *Getz v. State,* Del.Supr., 538 A.2d 726 (1988). In this case, however, any reliance on *Getz* is misplaced. Here, use of prior convictions solely for impeachment must be determined under D.R.E. 609.

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime *shall be admitted but only if* the crime (1) was punishable by death or imprisonment in excess of 2 years under the law under which he was convicted, and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect *or* (2) involved dishonesty or false statement, regardless of the punishment.

D.R.E. 609(a) (Emphasis added). Thus, the rule provides two means by which evidence of criminal convictions may be used for purposes of impeachment. First, prior convictions for any crime punishable in excess of two years imprisonment *shall* be admitted *if* the court determines the probative value of the evidence outweighs its prejudi-

A. Yes.
Q. See if this refreshes your recollection, where on December 2nd, 1986, you entered a guilty plea in front of Judge Gebelein to Possession with Intent to Deliver; do you remember that?
A. You say a guilty plea?
Q. Yes.
A. Yes, ma'am.
Q. That's a conviction, isn't it?
A. Yes, ma'am.
Q. So now you recall that conviction?
A. A guilty plea with the plea bargain they nolle prossed some charges, which means they dismissed some of the charges.
Q. But not that one; you pled guilty to that one?
A. Yes.

Q. You pled guilty to two counts of Possession with Intent to Deliver Marijuana, correct?
A. Yeah.
Q. So that makes six felony charges that you been convicted of over that span of years; is that right?
A. Yes.
Q. So it's more than a couple, correct?
A. Yes, ma'am.
Q. I mean six is more than a couple?
A. Yes, ma'am.

2. The State's reliance on *Waller v. State,* Del. Supr., 395 A.2d 365 (1978) is misplaced. The comment to D.R.E. 609(a), expressly states that the rule, adopted in July, 1980, modifies Delaware case law, including *Martin v. State,* Del. Supr., 346 A.2d 158 (1975), the very authority upon which *Waller* was decided.

cial effect.[3] D.R.E. 609(a)(1). Alternatively, evidence of a prior conviction for any crime may be admitted if it involved dishonesty or false statement. D.R.E. 609(a)(2). Because nothing in the record shows that the trial court either explicitly or implicitly balanced the probative value of Gregory's prior convictions against their prejudicial effect, this effectively foreclosed admission of any crimes save those involving dishonesty or false statement.

## C.

■ What then constitutes a crime involving dishonesty and false statement as contemplated by D.R.E. 609? The notes to FED.R.EVID. 609(a)(2), which is virtually identical to the Delaware rule, defines such crimes as those involving "perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Fed.R.Evid. 609, Notes of Conference Committee, H.R.CONF.REP. No. 93–1597 (1974), *reprinted in* U.S.C.C.A. 7051, 7098. By comparison, we have construed the phrase "dishonesty or false statement" in D.R.E. 609 to mean that crimes involving dishonest conduct as well as crimes involving false statements are admissible for impeachment purposes, *Tinnen v. State*, Del. Supr., 521 A.2d 247, 1987, Christie, J., at 2 (November 18, 1986) (ORDER), and we have further defined the term "dishonesty" as the act or practice of lying, deceiving, cheating, stealing or defrauding. *Id.*

In a purely philosophical sense it can be said, understandably, that all violations of the law, by their very nature, involve some element of dishonesty. Thus, one could argue that jay walking, spitting on a sidewalk, running a red light or a stop sign, and exceeding the speed limit, however slightly, are "dishonest" because they involve acts for which one can be punished by the State or its subdivisions. Those transgressions, however, are not the type which Rule 609(a)(2) contemplates. There must be something more than the act itself of violating the law. Thus, drug-related offenses generally do not fall within the rubric of D.R.E. 609(a)(2). For example, the elements of possession of a controlled substance with intent to deliver are (1) possession of a controlled substance and (2) an intent to manufacture or deliver it. *Kelson v. State*, Del.Super., 599 A.2d 413 (1991). The elements of this crime require no proof of conduct involving lying, deceiving, cheating, stealing or defrauding. If, despite this, we were to conclude that drug-related offenses generally involve deceit and dishonestly, then others might reasonably conclude that all offenses are of such a character. Given the plain language of D.R.E. 609(a)(2), and the analogous federal commentary, we need not add further gloss to what was clearly intended. Thus, we give effect to the manifest meaning of the words "dishonesty" and "false statement" as contemplated by the rule. That requirement precludes admission under D.R.E. 609(a)(2) of any offenses lacking the well-defined elements of such crimes.

## D.

Based on *Green v. Shearson Lehman/Am. Exp., Inc.*, 625 F.Supp. 382 (E.D.Pa.1985), the State asserts that drug convictions involve dishonesty and false statements under Rule 609. *Green* held only that in a *civil case*, a felony conviction for possession of cocaine with intent to distribute must be admitted for purposes of impeachment without balancing. Circuit courts that have considered the issue in criminal cases do not support the State's position. *See, e.g., U.S. v. Hastings*, 577 F.2d 38, 41 (8th Cir.1978) ("We are satisfied that a conviction on a narcotics charge is not a crime which involves 'dishonesty or false statement' within the meaning of Rule 609(a)(2), at least where there has

---

**3.** In construing a statute, use of the word "shall" has a settled meaning signifying a mandatory requirement. *Bartley v. Davis*, Del.Super., 519 A.2d 662 (1986); *Poe v. Poe*, Del.Super., 333 A.2d 403 (1975). It follows, therefore, that this rule imposes a mandatory duty upon a trial judge to balance, *sua sponte*, the probative value against the prejudicial effect of any of the defendant's prior convictions not involving dishonesty or false statement.

been no showing that the particular prior conviction rested on facts warranting the 'dishonesty or false statement' description."); *U.S. v. Lewis,* 626 F.2d 940, 946 (D.C.Cir.1980) (unlawful distribution of a controlled substance did not involve dishonesty or false statement); *U.S. v. Mehrmanesh,* 689 F.2d 822, 833 (9th Cir.1982) (Holding that prior narcotics convictions are not within the scope of F.R.E. 609(a)(2)); *Cf. U.S. v. Ortiz,* 553 F.2d 782 (2nd Cir.1977) (narcotics conviction may be admissible to impeach only if the crime involved circumstances of dishonesty or false statement).

Thus, federal authorities support our conclusions in *Tinnen,* that drug-related offenses can be used to impeach a defendant in a criminal case only when the balancing required under D.R.E. 609(a)(1) occurs.

Accordingly, we REVERSE Gregory's convictions and REMAND for further proceedings consistent with this opinion.