**Harlan ARCHIE, Defendant Below, Appellant/Cross–Appellee,**

v.

**STATE of Delaware, Plaintiff Below, Appellee/Cross–Appellant.**

**No. 72, 1998.**

Supreme Court of Delaware.

Submitted: Nov. 17, 1998.
Decided: Dec. 29, 1998.

J. Dallas Winslow, Jr., Assistant Public Defender, Wilmington, Delaware, for appellant.

Paul R. Wallace, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for appellee/cross–appellant.

Before VEASEY, Chief Justice, WALSH and HARTNETT, Justices.

VEASEY, Chief Justice:

In this case, we take the occasion to clarify the rule regarding the scope of impeachment evidence. That issue arises on the cross-appeal of the State that calls into question the extent to which Rule 609(a) of the Delaware Uniform Rules of Evidence ("D.R.E.") permits inquiry into a witness' prior criminal history for impeachment purposes. We hold that D.R.E 609(a), like the virtually identical federal counterpart, Fed.R.Evid. 609(a), allows inquiry on cross-examination beyond the issue of whether a witness has been convict-ed of a felony or a crime of dishonesty. We hold that the cross-examination may inquire into what those crimes were, and where and when those convictions occurred. Accordingly, the trial court erred in limiting the State's cross-examination.

On the defendant's appeal, we affirm the judgment of the trial court. It was not an abuse of discretion for the Superior Court to deny a mistrial on the ground that the prosecutor improperly placed before the jury his opinion of the defendant's credibility, where the court thereafter administered an appropriate curative instruction.

*Facts*

Defendant below-appellant, Harlan Archie, was convicted and sentenced to a term of imprisonment in the Superior Court for Robbery First Degree, Possession of a Deadly Weapon during the Commission of a Felony, Possession of a Deadly Weapon by a Person Prohibited, Burglary Second Degree, and Theft Misdemeanor. These crimes arose out of the following circumstances.

At the time of the incidents, the victim, Robert Williamson ("Robert"), was 28 years old and had cerebral palsy. Robert testified that on September 23, 1996, he encountered Archie on a bus and they decided to go to the mall together. The two had met years earlier while attending McKean High School, but had not seen each other since graduation. After shopping at the mall, the pair returned to Robert's home.

In the weeks that followed, Archie asked Robert for money. Robert twice loaned money to Archie before the incident on October 12, 1996. On that morning, Archie came to Robert's home in search of more money. When Robert opened the door to his apartment, Archie threatened him with a knife and said he would kill Robert if he called the police. In response, Robert gave Archie forty dollars. Archie returned later that morning and asked for more money, claiming he needed it to purchase a train ticket to Atlanta because the police were chasing him. Robert testified that Archie then "took" another forty dollars from him.

Early in the morning of October 15, 1996, Archie returned to Robert's apartment. While Robert was sleeping, Archie cut the telephone lines and broke into the living room. When inside, Archie demanded money from Robert and took twenty dollars, a gym bag, and a pair of sneakers.

At trial, a deceitful note that Archie wrote to Robert in late September 1996 was admitted into evidence. The note purported to be from a police officer, and it instructed Robert to let Archie have whatever he wanted and not to use the telephone. The court also admitted the testimony of Patrick Williamson ("Patrick"), that he drove to Robert's apartment on October 18, 1996 after Robert told him what Archie had done to him. Early the next morning, Patrick encountered Archie lying on the stairs in front of Robert's apartment. Patrick and Archie exchanged words. Patrick then threatened to throw Archie down the stairs, but Archie ran away before Patrick could do so.

In his defense, Archie testified that Robert gave him money to buy marijuana, a claim that Robert had denied. Archie stated that he told Robert that he had spent the money on other items, but that Robert did not seem to care. Archie also denied ever pulling a knife on Robert.

At the conclusion of the evidence, the jury found Archie guilty on all charges. The court sentenced Archie, an habitual offender, to 48 mandatory years in prison followed by a period of probation. Archie appealed the sentence and the State cross-appealed on the issue of whether the court abused its discretion in limiting the scope of cross-examination under D.R.E. 609(a).

### Archie's Claim of Prosecutorial Misconduct

■ Archie contends that the Superior Court abused its discretion by denying his motion for a mistrial on the ground that one of the prosecutor's questions was argumentative and improper. During the State's cross-examination of Archie, the following colloquy occurred:

(Q) You are the person who has been convicted of crimes involving deceit and dishonesty before, aren't you?

(A) Yes.

(Q) But they [the jury] should buy your story?

Archie's counsel immediately objected on the ground that the question was argumentative, and he asked for a curative instruction. The court then instructed the jury that it was striking the comment from the record. At sidebar, defense counsel requested a mistrial and the State withdrew the question. The court denied the mistrial, stating that a curative instruction would cure any possible error. The court then stated to the jury:

> Ladies and Gentlemen of the jury, the fact that the defendant has been convicted of a felony or crime involving dishonesty, if such be a fact, may be considered by you for only one purpose, namely, in judging the credibility of the defendant. The fact of such a conviction does not necessarily destroy or impair the defendant's credibility, and it does not raise an inference that the defendant has testified falsely. It is simply one of the circumstances that you may take into consideration in weighing the testimony of the defendant. Proof of a prior conviction on the part of the defendant must not and shall not be considered by you in determining the guilt or innocence of the defendant, but may only be considered in judging the defendant's credibility.

On appeal, Archie argues that the prosecutor asked the question solely to place before the jury his opinion of Archie's credibility. We hold that, although the prosecutor's comment was improper, the Superior Court did not abuse its discretion by refusing to grant a mistrial. The court properly issued a curative instruction, thus negating any prejudice to Archie's trial rights.

This Court has adopted a three-pronged test to evaluate the effect of improper comments made at trial. The factors are: (1) the closeness of the case; (2) the centrality of the issue affected by the alleged error; and (3) the steps taken to mitigate the effects of the error.[1] Archie has not met this test in his

---

1. *See Leacock v. State,* Del.Supr., 690 A.2d 926, 928 (1996).

claim that the trial court abused its discretion in denying the motion for mistrial.

First, the State's case against Archie was strong. The evidence consisted of direct testimony from the victim buttressed by circumstantial evidence, including the note, physical findings at the apartment, and evidence of the surrounding events as corroborated by other witnesses. Second, the alleged error was not central to the case. In fact, defense counsel previously had introduced Archie's prior convictions on direct examination. Thus, the fact that Archie had been convicted of dishonesty crimes was not the key issue for the jury.

Finally, the court properly struck the question from the record and issued a curative instruction.[2] Even when a prosecutor commits prejudicial error, it will usually be cured by the trial judge's instruction to the jury to disregard the remarks.[3] Under these circumstances, the trial judge, who was in the best position to judge the impact of improper questions in the context of the trial, did not abuse his discretion by refusing the motion for mistrial.[4]

### The State's Cross–Appeal on D.R.E. 609(a)

■ On cross-appeal, the State argues that the Superior Court abused its discretion by prohibiting the State from inquiring into the types of crimes for which Archie previously was convicted.[5] The State contends that, under D.R.E. 609(a), this Court has adopted the federal practice and procedure of allowing such impeachment evidence .[6] Archie concedes that the Superior Court's ruling conflicts with this Court's prior interpretation of the operation of D.R.E. 609(a). It is appropriate here to clarify the issue of prior-crimes impeachment under D.R.E. 609(a).

On August 19, 1997, the Superior Court ruled that it would allow the State to ask Archie what types of crimes he had committed. The court stated, "I believe under 609 and the Federal counterpart, the majority of cases that I've read allow the State to inquire as to what types of crimes." The next day, however, the court reversed its ruling over the State's objection and held that the State could inquire only into the number and character of convictions, *i.e.*, felonies or crimes of dishonesty.

The Superior Court erred in limiting the scope of inquiry into Archie's prior convictions. In 1980, this Court adopted the Delaware Uniform Rules of Evidence, noting in its order of adoption that the Rules were designed to follow closely the lead of the Federal Rules and those of many other states.[7] Prior to the adoption of D.R.E. 609,

---

**2.** See *Edwards v. State*, Del.Supr., 320 A.2d 701, 703 (1974).

**3.** See *Kornbluth v. State*, Del.Supr., 580 A.2d 556, 560 (1990).

**4.** See *Thornton v. State*, Del.Supr., 405 A.2d 126, 127 (1979).

**5.** 10 *Del.C.* § 9902(d) authorizes the State's cross-appeal on this issue. 10 *Del.C.* 9902(d) provides:

The State shall have an absolute right to appeal to an appellate court any ruling of a lower court on a question of law or procedure adverse to the State in any case in which the accused was convicted and appeals from the judgment, except that the decision or result of the State's appeal shall not affect the rights of the accused unless the accused, on his or her appeal, is awarded a new trial or a new sentencing hearing. Once the State perfects its cross-appeal, the appellate court shall review and rule upon the questions presented therein regardless of the disposition of the defendant's appeal. 10 *Del.C.* § 9902(d).

**6.** D.R.E. 609(a) provides:

Impeachment by evidence of conviction of crime. (a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted but only if the crime (1) constituted a felony under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect or (2) involved dishonesty or false statement, regardless of the punishment. D.R.E. 609(a).

**7.** See *In Re Adoption of the Delaware Uniform Rules of Evidence*, Del.Supr., (Feb. 1, 1980) (Order) (*en Banc*). See also *Delaware Study Committee Prefatory Note*, Delaware Uniform Rules of Evidence (1980) (explaining that notes from the United States Supreme Court Advisory Committee, Congressional Committee, and the Federal Judicial Center should be considered as being part of the comments prepared by the Delaware

this Court had held that the State could ask only two questions regarding a defendant's prior convictions: (1) whether the defendant had been convicted of a felony; and (2) how many times he or she had been convicted.[8] By allowing for more specific inquiries into a witness' criminal convictions, D.R.E. 609 liberalized the process by which a party could impeach a witness.

First, D.R.E. 609(a)(1), virtually identical to Fed.R.Evid. 609(a)(1), provides that the court shall admit for impeachment purposes prior convictions for any crime punishable by imprisonment in excess of two years if the court determines the probative value of the evidence outweighs its prejudicial effect.[9] Second, D.R.E. 609(a)(2), like its federal counterpart, requires that the court admit prior convictions involving dishonesty or false statements.[10] The adoption of D.R.E. 609 therefore demonstrates that Delaware has embraced the federal practice and procedure for impeachment by prior conviction.[11]

Under Fed.R.Evid. 609(a), a cross-examiner may inquire: (1) whether a witness previously has been convicted of a felony or crime of dishonesty; (2) if so, what those crimes were; and (3) where and when those convictions were obtained.[12] Although this Court stopped short of expressly adopting the same standard, we already have recognized that D.R.E. 609(a) modified the previous statutory rule and precedent concerning prior-crimes impeachment.[13] Therefore, in the case at bar, the Superior Court at first correctly ruled that it would permit the State to inquire into the types of crimes for which Archie was convicted. The next day, the court erred by limiting the inquiry.

D.R.E. 609(a), like its federal counterpart, is not without limitations. That is, D.R.E. 609(a) does not permit the examiner to expose details of the prior conviction. "In short, the cross examination should be restricted to the fact of the convictions, and the circumstances and details of prior criminal conduct should not be explored by the prosecutors."[14] By allowing a cross-examiner to inquire into the type of crime and the date and place of the convictions, without releasing the prejudicial details of the events, jurors will have more pertinent information with which to weigh the credibility of the witness.

Study Committee on the Delaware Rules of Evidence).

8. See Waller v. State, Del.Supr., 395 A.2d 365, 366 (1978).

9. See D.R.E. 609(a)(1); Gregory v. State, Del. Supr., 616 A.2d 1198, 1203–04 (1992). But see Fed.R.Evid. 609(a)(1) which imposes a one-year-imprisonment rule for felony convictions. Delaware adopted a two-year rule in recognition that the old version of 11 Del.C. § 4206 imposed a maximum two-year sentence for class A misdemeanors. See D.R.E. 609(a) comment.

10. See D.R.E. 609(a)(2); Webb v. State, Del.Supr., 663 A.2d 452, 461 (1995); Gregory, 616 A.2d at 1204.

11. See Gregory, 616 A.2d at 1204. It should be noted that the comment to D.R.E. 609(a) states that "609(a) follows U.R.E. 609(a) [the Uniform Rules version] rather than F.R.E. 609(a)." D.R.E. 609(a) comment. The only notable difference between U.R.E. 609(a) and Fed.R.Evid. 609(a) is that Fed.R.Evid. 609(a) states that "evidence that a witness *other than the accused* has been convicted of a crime shall be admitted ...," Fed.R.Evid. 609(a) (emphasis added), whereas U.R.E. 609(a) states that "evidence that he has been convicted of a crime shall be admitted...."

U.R.E. 609(a). This difference does not preclude this Court from adopting the federal interpretation of Rule 609(a).

12. See United States v. Fawley, 7th Cir., 137 F.3d 458, 474 (1998) (citing United States v. Dow, 7th Cir., 457 F.2d 246, 250 (1972)) (in asking defense witness about nature and date of conviction, prosecutor was merely " 'amplifying' the perfunctory nature of the question asked during direct examination"); United States v. Jacobs, 3d Cir., 44 F.3d 1219, 1224, cert. denied, 514 U.S. 1101, 115 S.Ct. 1835, 131 L.Ed.2d 754 (1995) (citing United States v. Brown, 3d Cir., 583 F.2d 659, 670 n. 15 (1978), cert. denied, 440 U.S. 909, 99 S.Ct. 1217 (1979)) (noting that cross-examination can include "the essential facts of a prior crime").

13. See Gregory, 616 A.2d at 1203 n. 2 (stating that D.R.E. 609(a) modified Delaware case law on prior-crimes impeachment); Mickens v. State, Del.Supr., No. 143, 1993, Moore, J., 1994 WL 91134 (March 3, 1994), Order at ¶ 6 (holding that Superior Court erroneously reverted back to old rule on prior crimes impeachment when it allowed defendant to inquire only into witness' number of convictions).

14. United States v. Robinson, 7th Cir., 8 F.3d 398, 409 (1993).

*Conclusion*

On the issue of the alleged prosecutorial misconduct, we affirm the judgment of the Superior Court. On the issue of the State's cross-appeal concerning D.R.E. 609(a), we reverse the decision of the Superior Court and adopt the federal interpretation of D.R.E. 609(a).