IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ARTEZZ FINNEY, | § | |
| | § | No. 282, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID No. 2306017062 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted:  October 29, 2025
Decided:    January 28, 2026

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW** and **GRIFFITHS**, Justices, constituting the Court *en banc*.

## **ORDER**

This 28th day of January, 2026, after consideration of the parties' briefs, the argument of counsel, and the record on appeal, it appears to the Court that:

(1)    Artezz Finney seeks review of his conviction for possession of a firearm by a person prohibited.  Finney claims that the Superior Court erred when it denied his motion to suppress evidence collected from his vehicle.

(2)    On June 30, 2023, Sergeant Sean Nolan, Detective Jackson Rosembert, and SPO Justin Phelps of the Wilmington Police Department were on patrol on Montgomery Street in Wilmington.

(3) Traveling northbound on Montgomery, the officers observed a black Chevrolet Malibu parked on the west side of the street. As Sergeant Nolan drove past the black Malibu, he observed an individual, later identified as Finney, sitting in the front driver seat, holding a silver firearm in his right hand. Finney was the only occupant of the vehicle.

(4) Sergeant Nolan shared his observations with the other two officers and stopped the vehicle in front of the black Malibu.

(5) Exiting from their vehicle, the officers drew their weapons and surrounded Finney's vehicle. Detective Rosembert promptly radioed in the incident, indicating the presence of a "person with a gun."[1]

(6) SPO Phelps immediately recognized Finney from prior police contacts.[2] As SPO Phelps opened Finney's door, he asked "Where is the gun?"[3] Finney responded, "It's back there. It's my wife's gun, not mine," and gestured toward the back of the vehicle.[4] SPO Phelps removed Finney from the vehicle, then asked, "Damn it, Artezz, what are you doing?"[5] to which Finney responded, "I just seen it. I picked it up. Like what the hell."[6]

---

[1] App. to Opening Br. at A16, A50, A63.
[2] *Id.* at A16, A44.
[3] *Id.* at A44, A57, A63.
[4] *Id.* at A57, A63.
[5] *Id.* at A41, A46, A64, A69.
[6] *Id.* at A57–58, A70.

(7) A large crowd began to walk toward the scene. For safety reasons, the officers transported Finney and his Chevy Malibu to the Wilmington Police Department.

(8) An inventory search of the Chevy Malibu at the Wilmington Police Department uncovered a silver SIG .45 caliber firearm from the rear floorboard behind the driver's seat.

(9) The officers arrested Finney, and a Superior Court grand jury eventually indicted him on charges of possession of a firearm by a person prohibited ("PFBPP") and possession of ammunition by a person prohibited ("PABPP").

(10) Before trial, Finney moved to suppress all statements and evidence seized as a result of his arrest. The sole ground for Finney's motion was an alleged Fifth Amendment violation. More specifically, Finney contended that the exchange between SPO Phelps and Finney described above regarding the location of the gun constituted custodial interrogation. And because the officers had not yet informed Finney of his *Miranda*[7] rights, the police officers' questioning was—or so argued Finney—a violation of his right against self-incrimination. According to Finney, the officers "utilized the information elicited by the illegal information to arrest [Finney] and seize and search the vehicle."[8] As a result, Finney argued to the trial court that

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[8] App. to Opening Br. at A11.

3

the answers he provided and the gun found during the vehicle search should be suppressed.

(11) The Superior Court scheduled a suppression hearing to take evidence and consider Finney's motion. At the hearing, Finney announced that he was "not contesting any of the facts,"[9] meaning that the only evidence that the court would review was the officers' body camera footage. Having reviewed the footage and heard counsel's argument, the court denied Finney's motion as to his answer to SPO Phelps's question concerning the location of the gun as well as to the recovered gun. The court did, however, suppress Finney's answer to the officer's follow-up question, which elicited Finney's admission that he picked up the gun.

(12) In the trial that followed, the jury found Finney guilty of PFBPP but not guilty of PABPP. The Superior Court sentenced Finney to 15 years of Level V incarceration, suspended after 10 years for 18 months of Level III supervised probation.

(13) In this appeal, Finney does not contest the Superior Court's denial of his motion to suppress. Instead, he forwards two new arguments, both grounded in the Fourth Amendment. He now argues that the officers' stop of his vehicle was unsupported by reasonable and articulable suspicion and thus unlawful. This, Finney argues, means that "anything recovered as a result should have been

---

[9] *Id*. at A31–32.

suppressed."[10]  Finney argues separately that "the subsequent inventory search was not conducted in accordance with standard police regulations and procedure"[11] and that, consequently, the court should not have admitted the gun found during the search.  Neither of these grounds was raised in Finney's motion to suppress, and the State offered no evidence or argument relevant to these grounds at Finney's suppression hearing.

(14)   In his opening brief, Finney did not address his failure to raise in the trial court the suppression issues he now asks us to address.  And when the State in its answering brief pointed out that Finney had not fairly presented the issues to the trial court, Finney responded that "[t]he motion to suppress, standing alone, preserved the issue[s] on appeal."[12]  In the alternative, Finney urges us to review his newly minted arguments under our plain-error review standard.[13]

---

[10] Opening Br. at 1.

[11] *Id.*

[12] Reply Br. at 1 (quoting *Gregory v. State*, 616 A.2d 1198, 1200–01 (Del. 1992)).  *Gregory* is plainly inapposite.  In that case, the defendant moved to suppress evidence found in a search of his apartment on the grounds that the police violated "the constitutional requirements of knock and notice."  The trial court denied the defendant's motion, and when he raised it on appeal, the State contended that he waived the issue because he did not separately object to the evidence when it was admitted at trial.  Given that context, the statement Finney quotes is stripped of any relevance in this case.

[13] Reply Br. at 2.

(15)    For the reasons we recently set forth in *Swanson v. State*,[14] we conclude that Finney has waived appellate review of his Fourth Amendment claims. In *Swanson*, we hewed to Superior Court Criminal Rule 12 and held that, except in limited circumstances, the failure to move to suppress evidence before trial will result in a waiver of appellate review of the issues that are properly included in a motion to suppress. To be sure, in *Swanson*, the defendant, unlike Finney here, did not file any motion to suppress. But *Swanson*'s logic applies with equal force in this case. Finney's motion in the trial court was narrowly focused on an alleged *Miranda* violation. Thus, during the suppression hearing, the State had no reason, except in some tangential sense, to present evidence relevant to Finney's current Fourth Amendment claims.

(16)    By not raising his Fourth Amendment claims in a pretrial motion to suppress, Finney has ensured that the evidentiary record relevant to his claims is underdeveloped. Yet he would require the State to defend the officers' conduct on that record, the inadequacy of which is a product of Finney's default. Were we to proceed in this manner, the unfairness to the State would be manifest. Hence, we decline to do so.

---

[14] __ A.3d ___, 2025 WL 3778943 (Del. Dec. 31, 2025); *see also Suber v. State*, __ A.3d. __, 2026 WL 184867, at *4 (Del. Jan. 15, 2026) ("[W]hen the failure to object to the admissibility of evidence 'effectively precluded the State from establishing an evidentiary record,' we do not engage in plain error review." (quoting *Swanson*, 2025 WL 3778943, at *3)).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court be AFFIRMED.

BY THE COURT:

/s/ *Gary F. Traynor*
Justice